IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KAHUNA SHANTRON VEGAS PATTERSON,<br><br>Defendant. | No. 3:24-mj-00138-KFR |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Richard P. Clark, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Police Detective employed by the City of Palmer, as well as a Task Force Officer with the Drug Enforcement Administration. I have been assigned as a TFO since December of 2021. I have been employed in law enforcement since May of 2017. Prior to my employment in law enforcement, I worked as a legal assistant for the District Attorney's Office in Anchorage, Alaska, and prior to that I served active duty with a reconnaissance, surveillance, and target acquisition unit within the U.S. Army's 101st Airborne Division.

2. I attended the University of Alaska's Law Enforcement Training Academy (LETA) in Fairbanks, Alaska, where I received over 1000 hours of instruction and was

certified by the Alaska Police Standards Council (APSC). I've received specialized training throughout my career in the enforcement of both local and federal drug laws as found in Alaska Statutes Title 11, Chapter 71, and Title 21 of U.S. Code. This specialized training included classroom instruction and practical exercises concerning narcotics trafficking, smuggling, money laundering, surveillance techniques, undercover assignments, confidential source debriefings, conspiracies, and interstate drug trafficking organizations. Most of my time assigned as a local, uniformed police officer was spent interdicting dangerous drugs on Alaska's road system.

3. During my time as a TFO, I have been involved in numerous investigations, including some with facts and circumstances like those in this case. I have conducted and participated in investigations relating to the use, possession, manufacture, importation, and trafficking of controlled substances. These investigations have led to the seizure of controlled substances to include cocaine, marijuana, heroin, methamphetamine, fentanyl, and various other synthetic drugs and their analogues. Because of this, I have become familiar with the normal methods of investigation to include visual surveillance, questioning witnesses, controlled deliveries, executions of search warrants, arresting suspects, issuing administrative and federal grand jury subpoenas, and the analysis of toll records, financial records, and other local police records. Because of this experience, I have become familiar with devices, paraphernalia, techniques, and practices used by people involved in the utilization, possession, manufacture, and trafficking of controlled substances. Further, I have gained insight and knowledge working and communicating with many experienced law enforcement agents and officers from local, state, and federal

031924

agencies. I consider this knowledge and insight to be a fundamental part of my training and experience.

## PURPOSE OF AFFIDAVIT

4.  I make this affidavit in support of an application for a criminal complaint and arrest warrant against KAHUNA SHANTRON VEGAS PATTERSON pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that KAHUNA SHANTRON VEGAS PATTERSON has committed the following federal criminal offenses:

> **Count 1**: That on or about March 11, 2024, within the District of Alaska, at or near Anchorage, the defendant, KAHUNA SHANTRON VEGAS PATTERSON, distributed controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).
>
> **Count 2:** That on or about March 11, 2024, within the District of Alaska, at or near Anchorage, the defendant, KAHUNA SHANTRON VEGAS PATTERSON, possessed a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A).

5.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the affidavit is intended to establish probable cause to support a complaint and secure an arrest warrant, I have not included every fact known to me concerning this investigation.

## RELEVANT STATUTES AND REGULATIONS

6.  Title 21, United States Code, Section 841(a)(1) (Distribution of Controlled Substances) provides in pertinent part:

> a.  "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally - (1) to manufacture, distribute, or

dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substances[.]"

7. Title 21, United States Code, Section 924(c)(1)(A) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) provides in pertinent part:

   a. "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime… for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime – (i) be sentenced to a term of imprisonment of not less than 5 years[.]"

8. Title 18, United States Code, Section 924(c)(2) (Drug Trafficking Crime) provides in pertinent part:

   a. "For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)…."

### FACTS ESTABLISHING PROBABLE CAUSE

### BACKGROUND

9. On October 2, 2020, JBER Security Forces contacted KAHUNA

SHANTRON VEGAS PATTERSON as he was driving alone on base. PATTERSON attempted to flee from the officers. Eventually, the officers were able to force him off the road. Inside his vehicle, they located 25 grams of marijuana, 6 MDMA pills, 8 grams of cocaine, digital scales, numerous rounds of 9mm and 5.56 ammunition, the magazine to a Ruger handgun, and a ballistic vest.

10. On December 10, 2020, PATTERSON attempted to pick up the vehicle from the October 2 incident at JBER. When he arrived at the Richardson Visitor Control Center, JBER Security Forces stopped his vehicle. PATTERSON was driving, with his brother Kamehameha Patterson in the passenger seat. JBER Security Forces searched the vehicle and recovered a Glock 20 10mm handgun, 15 grams of powder cocaine, 62 grams of marijuana, 87 Xanax bars, 37 Oxycodone pills, 18 Alprazolam pills, 210 grams of THC edibles, two scales, apparent drug packaging materials, and $675.00 in cash.

## THE MARCH 11 CONTROLLED BUY

11. On March 11, 2024, an undercover (UC) Special Agent with the Drug Enforcement Administration initiated telephonic communications with the phone number '602-363-7996'. This phone number was known to investigators to be utilized by PATTERSON. The UC Special Agent negotiated the sale of 600 fentanyl tablets from PATTERSON for $4,000.

12. At approximately 3:00 p.m. on March 11, the UC Special Agent met with PATTERSON in the parking lot of Bass Pro Shops, located at 3046 Mountain View Drive, in Anchorage, within the District of Alaska. There, the UC Special Agent approached the vehicle PATTERSON was driving. The UC Special Agent observed a Glock handgun with

an extended magazine at PATTERSON'S right hip, between him and the center console of the vehicle. The UC Special Agent gave PATTERSON the $4,000, and PATTERSON gave the UC Special Agent 525 blue, round tablets crudely stamped with 'M' and '30', which I know to commonly be pills holding a mixture or substance containing a detectable amount of fentanyl.

13. Once the transaction was completed, the UC Special Agent informed investigators that PATTERSON was wearing a balaclava-style mask, a black knit beanie over his head, a dark-colored hooded sweatshirt, light colored jogging pants, and black sneakers.

14. Investigators followed PATTERSON as he departed the area. PATTERSON drove to a residence nearby and went inside. PATTERSON then left approximately five minutes later. When PATTERSON was leaving, I was positioned down the road and he drove past my vehicle. When he drove past, I could see through the windshield and saw PATTERSON without the balaclava but still wearing the black knit beanie. I was able to identify PATTERSON after reviewing a driver license photograph of him from December 28, 2023.

### THE MARCH 18 ATTEMPTED CONTROLLED BUY

15. On March 18, 2024, the UC Special Agent contacted PATTERSON via '602-363-7996'. This time, the UC Special Agent and PATTERSON negotiated for the sale of 1000 fentanyl tablets for $5,500. The deal was to take place at Bass Pro Shops at 3:00 p.m.

16. At approximately 3:15 p.m., PATTERSON arrived and parked next to the UC Special Agent. The UC Special Agent handed PATTERSON the money and

PATTERSON fled the area without supplying the drugs. Investigators observed PATTERSON leave the parking lot and drive to Party City, a retail store located at 3090 Mountain View Drive. I observed PATTERSON walk into Party City wearing the same clothing that he wore during the drug transaction on March 11. I observed that PATTERSON had a balaclava over his face.

17. PATTERSON remained inside Party City for approximately one minute. After exiting, investigators with visible police markings approached PATTERSON to arrest him. Upon seeing investigators, PATTERSON produced a Glock handgun with an extended magazine from his waistband and placed it on the ground. PATTERSON was arrested without further incident. The Glock handgun appeared visually consistent with the firearm that the UC Special Agent saw Patterson wearing on his hip during the first controlled buy three days earlier.

18. In the bathroom of party city, Wasilla Police Investigator Michael Clauson located the money stolen from the UC Special Agent. The money, along with a cellphone, was located inside the trash bin but underneath the trash bag.

19. PATTERSON was transported to the Anchorage District Office of the DEA and interviewed. He admitted to possessing the Glock handgun, and admitted to going into Party City, but denied selling the UC Special Agent fentanyl tablets on March 11, and declined to make any further statement.

20. PATTERSON was transported to the Anchorage Correctional Complex and booked on violations of 21 U.S.C. § 841(a)(1)(B) and (b)(1)(C), as well as 18 U.S.C. § 946(c)(1)(A).

031924

21. Following PATTERSON's arrest, investigators reviewed recorded phone calls that he made from Anchorage Correctional Complex that were recorded over the Securus phone system. In one of those calls, PATTERSON instructed the other party to delete all his iCloud data on his phones. I terminated the phone call. A few moments later, PATTERSON called this same person back and again instructed them to delete his data because authorities were about to end the call.

## CONCLUSION

22. Based on the foregoing, I submit that there is probable cause to believe that KAHUNA SHANTRON VEGAS PATTERSON has committed the offenses of Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). Accordingly, I ask the Court to issue the complaint and a warrant for KAHUNA SHANTRON VEGAS PATTERSON's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

Respectfully submitted,

_____
Richard Clark
Task Force Officer, DEA

031924

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim.P. 4.1 and 41(d)(3) for a search warrant this____day of March, 2024.

_____
Hon. Kyle F. Reardon
U.S. Magistrate Judge

March 19, 2024